# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF KENTUCKY
# PADUCAH DIVISION
# CASE NO. 5:08-CV-00196-R

KATIE S. MERCER                                                                  PLAINTIFF

v.

TRACTOR SUPPLY COMPANY                             DEFENDANT

## MEMORANDUM OPINION & ORDER

This matter comes before the Court upon Defendant's Motion for Summary Judgment (DN 15). Plaintiff has responded (DN 18), and Defendant has replied (DN 19). This matter is now ripe for adjudication. For the reasons that follow, Defendant's Motion is DENIED IN PART and GRANTED IN PART.

## BACKGROUND

This employment discrimination suit arises out of Defendant Tractor Supply Company's failure to promote Plaintiff Katie S. Mercer to Store Manager in April 2008. Tractor Supply is an operator of retail farm and ranch stores. Mercer began working at its Paducah, Kentucky store ("Store 184") in April 2001 as a part-time cashier. Tractor Supply made her a full-time employee in 2004, and promoted her to Team Leader in July 2004. By January 2006, Mercer had been promoted to Assistant Store Manager.

Tractor Supply's stores are divided into districts. Store Managers direct the activities of the store on a day-to-day basis and report to District Managers. District Managers oversee the operation of a group of stores in a district. From the time Mercer became a Team Leader in 2004 through the end of her employment, she worked under Store Manager Chalon Lassiter. For most of that time, Store 184 was in District 828, and Lassiter reported to District Manager Eric Radichel. Around January 2008, Store 184 was transferred to District 832, which was under the

direction of District Manager Mike Stringer.

On April 8, 2008, Lassiter announced he was resigning as the Paducah Store Manager. Mercer expected to replace him. However, without considering other potential applicants, Stringer hired Steven Holmes, who was working as an extra Store Manager in Horn Lake, Mississippi, where he had been trained. On April 11, when Mercer learned of Holmes's assignment to Store 184 she was very upset and informed Lassiter that she was resigning. She worked with no problems until her final day, April 25.

Tractor Supply originally hired Holmes on December 27, 2007, and Holmes began working on January 7, 2008. He participated in Tractor Supply's Manager in Training (MIT) program and completed its final step, a Management Skills course, on April 4, 2008. After completing the MIT program, Stringer asked Holmes to continue to work at the Horn Lake store until the next Store Manager opening in the district.

Mercer also participated in the MIT program. She completed the training and assessments on March 20, 2008, and became eligible for the Management Skills course. She was not immediately sent to the class. Mercer had also received Store Manager training as part of her duties as Assistant Store Manager, and even acted as Store Manager during September and October 2007 when Lassiter was on medical leave. After Lassiter returned from leave, Mercer continued doing some of his Store Manager duties as part of her training. Lassiter expected Mercer to be promoted to Store Manager when he resigned. Radichel also expected her to become Store Manger when Lassiter resigned or retired.

Mercer filed the instant civil action on December 5, 2005. She alleges that Tractor Supply discriminated against her by excluding her from the promotion process because of her

sex and age in violation of Title VII of the Civil Rights Act of 1964 and the Kentucky Civil Rights Act.[1]  She also claims that Tractor Supply constructively discharged her.

**STANDARD**

Summary judgment is appropriate where "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact."  *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).  The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case.  *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).  The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff.  *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  Mere speculation will not suffice to defeat a motion for summary judgment: "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment.  A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate."  *Monette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

---

[1] Kentucky's discrimination laws mirror and are interpreted in accordance with federal discrimination statutes.  *See, e.g.*, *Smith v. Leggett Wire Co.*, 220 F.3d 752, 758 (6th Cir. 2000).

**ANALYSIS**

**I.      Failure to Promote**

To prove that Tractor Supply discriminated against her when it did not promote her to Store Manager, Mercer must first establish a prima facie case of discrimination. *E.g.*, *Sutherland v. Mich. Dep't of Treasury*, 344 F.3d 603, 614 (6th Cir. 2003). If Mercer succeeds in stating a prima facie case, the burden shifts to Tractor Supply to articulate a legitimate, non-discriminatory reason for the adverse employment action. *See, e.g.*, *id.* at 615. If Tractor Supply articulates such a reason, then the burden shifts back to Mercer to show that Tractor Supply's proffered reason is merely pretext for discrimination. *See, e.g.*, *id.*

Typically, to make out a prima facie case of discrimination in the failure-to-promote context a plaintiff must show "(1) that he is a member of a protected class; (2) that he applied and was qualified for a promotion; (3) that he was considered for and denied the promotion; and (4) other employees of similar qualifications who were not members of the protected class received promotions." *Id.* at 614. However, "a plaintiff does not have to establish that he applied for and was considered for the promotion when the employer does not notify its employees of the available promotion or does not provide a formal mechanism for expressing interest in the promotion." *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1022 (6th Cir. 2000). Instead, the employer is "held to a duty to consider all those who might reasonably be interested in a promotion." *Id.*

Mercer satisfies the first prima facie prong for her sex and age discrimination claims. She is female and was over forty when the incident occurred, both protected classes.

Mercer never applied for, nor was she considered for the promotion to Store Manager

4

because Stringer "automatically filled" the position by selecting Holmes without soliciting other applications. Tractor supply argues that "[i]n essence, there was no vacancy," but the Court finds that applying this logic would create an untenable loophole in the law. An employer cannot avoid liability by not formally opening up a job for competition, even if the vacancy was created by another employee's resignation. Because Tractor Supply did not provide a formal mechanism for expressing interest in the promotion, and instead filled the Store Manager position without considering other applicants, the Court finds that the exception articulated in *Dews* applies in this case. Tractor Supply had a duty to consider Mercer because as Assistant Store Manager she might reasonably have been interested in the Store Manager opening. In fact, Stringer testified that he knew Mercer wanted the job.

Furthermore, the Court finds that Mercer has shown that she was qualified for the position of Store Manager. She completed the training and assessments portion of the MIT program on March 20, 2008. Though she had not taken the Management Skills course, she has presented evidence that other individuals were permitted to assume Store Manager positions before completing the class. Mercer had also received Store Manager training as part of her duties as Assistant Store Manager, and even acted as Store Manager during September and October 2007 when Lassiter was on medical leave. After Lassiter returned from leave, Mercer continued doing some of his Store Manager duties as part of her training. Mercer had been a long-time employee of Tractor Supply and received satisfactory evaluations from her superiors. Both Lassiter and Radichel expected Mercer to be promoted to Store Manager when Lassister resigned. The Court also notes that while Tractor Supply states Mercer was unqualified for the position, it does not explain why.

5

Lastly, the Court finds that Mercer has satisfied the fourth prima facie prong. Holmes, a thirty-three year old male with similar qualifications, received the promotion. Tractor Supply argues that Holmes was not "similarly situated" to Mercer because "[h]e had completed the MIT training, was working as an extra manager, and was awaiting a permanent assignment." None of these factors make Holmes's qualifications much different than Mercer's, however. Mercer had also completed the MIT training, except for the Management Skills course, but she has presented evidence that other individuals were permitted to assume Store Manager positions before completing the class. Mercer was working in Paducah for over two years as an Assistant Store Manager, described by Radichel as "the key training position for management" and as "managers-in-waiting." Holmes seems to have been an extra Store Manager in Horn Lake for only four days prior to being assigned as Store 184's new Store Manager, and had only been employed by Tractor Supply for about three months. The Court does not believe that this brief experience makes him dissimilarly qualified to be Store Manager. Also, the fact that Holmes was awaiting a permanent assignment does relate to his qualifications for the position.

Therefore, Mercer has satisfied her prima facie burden. Tractor Supply must then articulate a legitimate, non-discriminatory reason for its action. In doing so, it must present evidence that "raises a genuine issue of fact as to whether it discriminated" against Mercer by "clearly set[ting] forth, through the introduction of admissible evidence, the reasons for" promoting Holmes instead of her. *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254-55 (1981). "The explanation provided must be legally sufficient to justify a judgment for the defendant." *Id.* at 255. Stringer testified that he selected Holmes because Holmes was awaiting the next Store Manager opening in the district. Specifically, he stated in his affidavit:

> Once it was clear [Lassister] was leaving, I realized Steven Holmes would be assigned to the store manager opening in Paducah. . . . When Lassiter resigned, Holmes was working as an extra manager in the Horn Lake store in my district awaiting the next store manager opening. We did not know where it would be, and Holmes had promised to relocate anywhere in the district before he was hired and placed in the MIT program. I never considered any other persons for the position, and I did not compare Holmes' qualifications to any other person's qualifications. I did not make any decision not to select Plaintiff for the position. There were no applications accepted or interviews conducted. Holmes was well-qualified for the position. . . . I had asked Holmes to continue working with [the Horn Lake store manager] as an extra manager until the next store manager opening.

The Court finds that this proffered reason[2] just barely satisfies Tractor Supply's burden. Tractor Supply does not explain why Holmes was first in line for next Store Manager opening. It does not point to any policy or practice describing how certain individuals are selected to be in the pipeline for Store Manager positions. It does not explain what differences, if any, there are between external MIT candidates and internal employees in the MIT program. Aside from a brief footnoted statement in its reply, it does not address how Holmes's willingness to relocate to any store in the district might give him priority over Mercer for the Paducah Store Manger job. The reasoning for Holmes being selected because he had already been selected is an example of circular logic. However, it is not facially discriminatory and without more evidence the Court cannot say it is not legitimate.

The burden thus shifts back to Mercer to show that this reason is merely pretext for discrimination. "Pretext may be established 'either directly by persuading the [trier of fact] that

---

[2] Mercer does not address this reason in her brief because she frames Tractor Supply's proffered reason as that Holmes was the better qualified candidate. While Tractor Supply does state that Holmes was more qualified, it does so in the context of challenging Mercer's anticipated pretext argument. Tractor Supply discusses its legitimate nondiscriminatory reason for its actions on page 10-11 of its Motion, citing paragraphs 6-8 of Stringer's Affidavit.

a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence.'" *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 392 (6th Cir. 2008) (quoting *Burdine*, 450 U.S. at 256). A plaintiff may "demonstrate pretext by offering evidence which challenges the reasonableness of the employer's decision 'to the extent that such an inquiry sheds light on whether the employer's proffered reason for the employment action was its actual motivation.'" *Id.* at 393 (citation omitted). Furthermore, evidence that the plaintiff is as or more qualified than the selected applicant may be relevant to the question of pretext:

> 'If a factfinder can conclude that a reasonable employer would have found the plaintiff to be significantly better qualified for the job, but this employer did not, the factfinder can legitimately infer that the employer consciously selected a less-qualified candidate– something employers do not usually do, unless some other strong consideration, such as discrimination, enters into the picture.'

*Id.* (quoting *Aka v. Washington Hosp. Ctr.*, 156 F.3d 1284, 1294 (D.C. Cir. 1998)). "Yet, when qualifications evidence is all (or nearly all) that a plaintiff proffers to show pretext, the evidence must be of sufficient significance itself to call into question the honesty of the employer's explanation." *Bender v. Hecht's Dep't Stores*, 455 F.3d 612, 627 (6th Cir. 2006).

Here, Mercer argues that she was the better qualified candidate. She had been employed by Tractor Supply for seven years; Holmes had been employed for about three months. She was familiar with Store 184's customer base, the needs of its clients, and the geographical landscape around Paducah; Holmes was not. She had managed farm and farm implement operations; Holmes had managed a lumber and building supply store. She had also actually managed Store 184 for two months and had maintained many of the managerial duties until the end of her employment.

Tractor Supply states that these characteristics do not mean that its assignment of Holmes is not credible, and argues that crediting Mercer's contentions would allow her to determine the criteria on which it makes its promotion decision. Tractor Supply does not, however, elaborate on why Mercer's qualifications do not make her the better candidate for the job. Additionally, Tractor Supply has stated that it does not have any written or formal policies detailing the qualifications considered for store manager positions, and that the criteria by which a particular candidate is assessed may differ at times based on the needs of a particular store or district.

Mercer also argues that by selecting Holmes, who had been hired only three months prior, Tractor Supply was not adhering to its policy of promoting from within. She testified that she had been told that assistant managers were the company's future store managers, and that the culture of Tractor Supply was to "bring people up." Additionally, Mercer's former district manager, Radichel, would likely have selected her for the position had it become available before Store 184 was redistricted to Stringer's district.

From the evidence before it, the Court finds that Mercer has presented a question of fact as to whether Tractor Supply's proffered reason for selecting Holmes is merely pretext for discrimination. A reasonable juror could find that a reasonable employer would have found Mercer was better qualified to be Store Manager. Tractor Supply's articulated reason is also "subject to particularly close scrutiny" because the promotion determination was based on subjective criteria. *See Bruhwiler v. Univ. of Tenn.*, 859 F.2d 419, 421 (6th Cir. 1988). Furthermore, a juror could find that Tractor Supply acted against its policy of promoting from within and bringing employees up within the company by selecting Holmes instead of Mercer.

Even when considered together, the Court recognizes Mercer has not presented strong

9

evidence of pretext. For example, she does not have evidence of gender or age related comments made by anyone at Tractor Supply. Nevertheless, what she has presented is sufficient because not much evidence was needed to rebut Tractor Supply's weak articulated reason for not promoting her. The Court is concerned that by pre-selecting individuals to wait in the wings for the next available position within a district, an employer can bypass the protections against discrimination provided by federal and state statutes. This concern, combined with the evidence and arguments presented, leads the Court to the conclusion that summary judgment is inappropriate in this case. Whether Tractor Supply discriminated against Mercer based on her sex or age is an issue best determined by a jury.

## II. Constructive Discharge

Mercer also argues that Tractor Supply constructively discharged her by expecting her to help train Holmes. Mercer's Complaint, however, contains no allegation of constructive discharge. Consequently, she cannot make that claim now. *See* Fed. R. Civ. P. 8, 12(b)(6). Her Complaint did not give Tractor Supply fair notice that she was bringing a constructive discharge suit against it. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Even if it did, however, and even if Mercer's EEOC charge could also be interpreted to encompass a constructive discharge claim, Tractor Supply would still be entitled to summary judgment.

"[A] constructive discharge exists if working conditions are such that a reasonable person in the plaintiff's shoes would feel compelled to resign." *Bruhwiler*, 859 F.2d at 421. To establish her claim Mercer must show that a reasonable employer would have foreseen that she would resign, given that she would be required to help train the individual selected for the position she expected to be promoted to. *See Wheeler v. Southland Corp.*, 875 F.2d 1246, 1249

10

(6th Cir. 1989). While being required to train the person who would supervise her could be a factor in a constructive discharge claim, it is not enough by itself in this case to survive summary judgment. First, Mercer would not have been required to train Holmes for the Store Manager job because he was already trained for that position. Instead, she would have helped Holmes become familiar with Store 184 and its customers. Second, she stated in her deposition that the only reason that she resigned was that she was not interviewed for the Store Manager position, not that she would have to train Holmes.

The Court finds that Mercer has not shown that a reasonable person in her position would have felt compelled to resign, or that a reasonable employer would have foreseen that she would resign. Therefore, Tractor Supply is entitled to summary judgment on Mercer's constructive discharge claim.

## CONCLUSION

For the foregoing reasons, IT IS HEREBY ORDERED that Defendant's Motion for Summary Judgment (DN 15) is DENIED IN PART and GRANTED IN PART.